IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WESTERN FALCON, INC. and<br>WAGON TRAIL VENTURES, INC.<br><br>       Plaintiffs,<br><br>vs.<br><br>MOORE ROD & PIPE, LLC and<br>MOORE PIPE INC.<br><br>       Defendants. | Case No. 4:13-cv-02963<br><br>JURY DEMANDED |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO LIFT STAY AND
MOTION TO DISSOLVE PRELIMINARY INJUNCTION [Doc. 42][1]**

---

[1] Plaintiffs object to Defendants' Motion [Doc. 42] as premature and improper because the parties agreed that this case remain stayed until all *inter partes* review ("IPR") appeals are exhausted and the U.S. Patent and Trademark Office ("PTO") issues an IPR certificate.

1

## TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................................ 3

I.     INTRODUCTION ............................................................................................... 5

II.    NATURE AND STAGE OF THE PROCEEDING ............................................. 7

III.   ISSUES PRESENTED ......................................................................................... 9

IV.   SUMMARY OF ARGUMENT ........................................................................... 9

V.    ARGUMENT ..................................................................................................... 11

       A.    Lifting the stay prematurely will destroy the carefully negotiated
             structure of the Agreed Order of Stay and Injunction,
             possibly result in inconsistent rulings and waste judicial resources ........... 11

       B.    There has been no significant change in factual conditions or in the
             law to justify dissolving the agreed preliminary injunction .................... 13

             1.    Dissolving a preliminary injunction requires a significant
                   change in circumstances and extreme, unexpected hardship ........... 13

             2.    The PTAB's final written decision is not a significant
                   change in circumstances because it is not a final resolution
                   of the IPR Proceeding ........................................................................ 14

             3.    *Limelight* is simply a red herring, and the change in the
                   law caused by *Limelight* does not apply to this case ..................... 15

VI.   CONCLUSION ................................................................................................. 18

# TABLE OF CITATIONS

**Cases**

*Agostini v. Felton,*
    521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) .................................. 13

*Allergan, Inc. v. Alcon Laboratories, Inc.*,
    324 F.3d 1322 (Fed. Cir. 2003) .................................. 17

*Bettcher Industries, Inc. v. Bunzl USA, Inc.*,
    661 F.3d 629 (Fed. Cir. 2011) .................................. 11

*Elgin Nat. Watch Co. v. Barrett*,
    213 F.2d 776 (5th Cir. 1954) .................................. 9

*ePlus, Inc. v. Lawson Software, Inc.*,
    760 F.3d 1350 (Fed. Cir. 2014) .................................. 11

*Fina Research, S.A. v. Baroid Limited*,
    141 F.3d 1479 (Fed. Cir. 1998) .................................. 16, 17

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013) .................................. 11

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
    134 S.Ct. 2111 (2014) .................................. *passim*

*McLaughlin v. Mississippi Power Co.*,
    376 F.3d 344 (5th Cir. 2004) .................................. 9, 13

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008) .................................. 15

*Personal Audio LLC v. Togi Entertainment, Inc.*,
    2014 WL 1318921 (N.D. Cal. Mar. 31, 2014) .................................. 11

*Scionti v. Dornfried*,
    137 F.3d 1351, 1998 WL 92454 (5th Cir. 1998)
    (not selected for publication) .................................. 9

*Seitz v. Envirotech Systems Worldwide Inc.*,
    2007 WL 1795683 (S.D. Tex. June 19, 2007) .................................. 9, 13

*Software Rights Archive, LLC v. Facebook, Inc.*,
    2013 WL 5225522 (N.D. Cal. Sept. 17, 2013) .................................. 11

*U.S. v. Swift & Co.,*
    286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932) ............................................................. 13

*Valentine Sugars, Inc. v. Sudan,*
    34 F.3d 320 (5th Cir.1994) ................................................................................................ 13

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
    2014 WL 121640 (N.D. Cal. Jan. 13, 2014) ..................................................................... 11

*Virginia Innovation Sciences, Inc. v. Samsung Electronics Co., Ltd.*,
    983 F.Supp.2d 713 (E.D. Va. 2014) .................................................................................. 11

**Statutes**

35 U.S.C. § 271(b) ................................................................................................................ 16, 17

35 U.S.C. § 318(b) ....................................................................................................................... 11

**Regulations**

37 C.F.R. § 42.80 ......................................................................................................................... 11

37 C.F.R. § 42.100(c) ................................................................................................................... 12

Plaintiffs Western Falcon, Inc. and Wagon Trail Ventures, Inc. file this Response to Defendants Moore Rod & Pipe, LLC ("MRP") and Moore Pipe Inc.'s ("MPI") Motion to Lift Stay and Motion to Dissolve Preliminary Injunction [Doc. 42] ("Motion"). Plaintiffs oppose the Motion and would respectfully show this Court as follows:

## I. INTRODUCTION

Plaintiffs oppose Defendants' request for the Court to prematurely lift the stay and dissolve the preliminary injunction that was ordered by the Court in the Agreed Order of Stay and Injunction, entered on February 4, 2014 [Doc. 34] ("Agreed Order"). The parties agreed to the carefully balanced terms of the Agreed Order, and it would be improper to disturb that agreement now.

First, the stay should not be lifted prematurely, but rather should remain in effect until a "Final Resolution" of the *Inter Partes* Review ("IPR") is reached in the U.S. Patent and Trademark Office ("PTO"), defined as an issuance of a "certificate," which will either confirm or cancel the patent claims. At that time, as a matter of law, estoppel will be triggered against both Plaintiffs and Defendants. The Agreed Order states, "Once the stay is lifted, each and every party to this case agrees that they will each be estopped from asserting or maintaining claims or defenses which were, or could have been, asserted in the IPR Proceeding." Thus, any lifting of the stay prematurely will improperly trigger estoppel, and not only unfairly deny Plaintiffs their full statutory rights of rehearing and appeal, but also create parallel litigation in this Court and the PTO, with potentially inconsistent rulings and a waste of judicial resources.

Second, the preliminary injunction should not be dissolved, but rather should expire by its own terms on December 7, 2014, in five weeks. As brokered by the Court during the hearing in February, that injunction was the *quid pro quo* for Defendants getting the stay they had

requested. For example, because of the stay, Plaintiffs have lost their opportunity to take early discovery on their affirmative claims. Furthermore, there is no legal basis for dissolving the injunction.

Contrary to Defendants' arguments, there is no relevant change in the law or circumstances, much less any significant change, that would justify dissolving the injunction. The *Limelight* case is a red herring. The issue in *Limelight* was whether inducement could be based on direct infringement by more than one actor, i.e., "divided infringement." There is no divided infringement here, and the rule that liability for inducement requires direct infringement has been well-settled for over fifty years. Nor is there any change in circumstances justifying dissolving the injunction. The final written decision by the PTAB was expressly contemplated when the parties entered into their agreement and the Court entered the Agreed Order in February, as was MRP's desire to enter the rod pumping marketplace with its Shur-Flo™ product.

Finally, Defendants do not allege they are suffering hardship, much less hardship that is extreme, unexpected, and oppressive, all of which is required for dissolving an injunction. Their stated desire to "resume all commercial operations" contradicts Defendants' representations to this Court during the hearing in February that they simply wish to wait until December, when the patent expires, to enter the rod pumping marketplace:

> MR. KASPRZAK: Well, the patent expired (sic, expires) by its own terms in December of this year.
>
> THE COURT: Right.
>
> MR. KASPRZAK: And whatever preparations are being made are being made to compete after December of this year when it will no longer be a patent violation. My client has no intention of violating a patent while there is still a chance that he can be prosecuted for it.[2]

---

[2] Hearing Transcript [Doc. 35] at 6:22-7:4.

* * *

>   MR. KASPRZAK: I don't want to mislead the Court or opposing counsel. It is [MRP's] intention to go compete in [the rod pumping well] market *when there is no longer a patent protecting them or prohibiting them from doing so*. But in the meantime, we are only going to compete in the market that's not protected by their patent.[3]

## II. NATURE AND STAGE OF THE PROCEEDING

On October 8, 2014, Plaintiffs filed this action against MRP, a Houston-based company, and MPI, a Canadian affiliate, to enforce Plaintiffs' intellectual property rights, including not only Plaintiffs' patent rights but also an injunction for MRP's false advertising and tortious interference with employees and customers, and Defendants' trade secret misappropriation.[4]

This dispute originally arose in April 2013, when Plaintiffs sent a cease-and-desist letter to MPI, a Canadian company, demanding that MPI stop inducing infringement by supplying its Shur-Flo™ product to the United States for use in rod pumping wells. MPI instructed the distributor that had been identified in the cease-and-desist letter to stop selling the Shur-Flo™ to customers for rod pumping applications, but otherwise MPI did not agree to stop sales of Shur-Flo™ into the United States.

Also, in early 2013, Plaintiffs became aware of MRP, a newly-formed company that was an affiliate of MPI. MRP had announced its purchase of property in the Houston area less than 10 miles from Plaintiffs' headquarters, and its plans to manufacture and sell Shur-Flo™ for use in the United States, in the rod pumping marketplace. MRP began contacting Plaintiffs' customers and polymer suppliers and aggressively hiring away Plaintiffs' employees. MRP gave

---

[3] *Id*. at 16:15-20 (emphasis added).
[4] Complaint [Doc. 1]. The lawsuit was not in "retaliation" to MRP's filing of the IPR petition, but rather to MRP's aggressive entry into the rod pumping market which included not only promoting Shur-Flo™ but also falsely advertising incorrect temperature capabilities of one of its products to at least one of Western Falcon's clients, hiring away Western Falcon employees, and misappropriating Plaintiffs' trade secrets. If all MRP had done was simply file the IPR petition, Plaintiffs would not have filed this lawsuit.

no signs of stopping its incursion into the Houston market. Instead of agreeing to honor Plaintiffs' patent rights, which would expire in less than 18 months, MRP hired lawyers. MRP first communicated with Plaintiffs via a June 2013 letter from its patent counsel, in which it contended that the '362 patent was invalid. Shortly thereafter, MRP approached Plaintiffs and sought a license, which was refused. Three days later, in July 2013, MRP filed its IPR petition in the PTO.

Plaintiffs requested a declaratory judgment against MRP under 28 U.S.C. §§ 2201 and 2202, seeking a declaration that any sales of Shur-Flo™ polymer liner products for rod pumping applications would constitute inducement of infringement, if the products were used in a rod pumping well. Plaintiffs recognized that MRP had not yet made sales of its Shur-Flo™ and direct infringement had not yet taken place, and Plaintiffs accordingly sought a declaratory judgment regarding inducement. MRP filed counterclaims including a declaratory judgment, in which it sought a declaration of no inducement of infringement.

In contrast, Plaintiffs charged MPI with active inducement of infringement, based on MPI's knowledge of the '362 patent, its advertising of Shur-Flo™ for rod pumping applications, its supplying of Shur-Flo™ to the United States, and its knowledge that the Shur-Flo™ would be sold for use in rod pumping applications.

After the parties' Rule 26(f) conference on January 10, 2013, the parties filed their Joint Discovery/Case Management Plan [Doc. 25], including a description of their planned discovery. Plaintiffs served a notice of deposition of MRP under Federal Rule of Civil Procedure 30(b)(6). MRP filed a motion to quash, and the Court set a hearing on the discovery dispute on January 30, 2013. At the hearing, the Court addressed the parties' arguments relative to Defendants' Motion to Stay and Plaintiffs' Motion for Preliminary Injunction.

At the Court's instruction, the parties agreed to work on a proposed agreed order of stay and injunction, and this Court entered the Agreed Order of Stay and Injunction on February 4, 2014 [Doc. 34]. Pursuant to the Agreed Order, a preliminary injunction was entered and the case was stayed until a "Final Resolution" of the IPR proceeding.[5]

## III. ISSUES PRESENTED

**Issue One**

> Under the Agreed Order of Stay and Injunction, the parties agreed that this case would remain stayed until all IPR appeals were exhausted and a certificate was issued by the PTO.[6] In this case, the PTAB's final written decision is subject to rehearing and appeal, and a certificate has not issued. Thus, given that prematurely lifting the stay could result in inconsistent rulings and waste judicial resources, would it be an abuse of discretion for the Court to lift the stay prematurely.[7]

**Issue Two**

> Under federal law, there must be a significant change in factual conditions or in the law to justify dissolving a preliminary injunction as well as extreme, unexpected hardship.[8] This case involves an agreed preliminary injunction with agreed deadlines, and there has been no discovery, no final IPR resolution, and no significant changes in the law. Therefore, given that the factual conditions and the law have not significantly changed since the parties agreed to the preliminary injunction, and the lack of extreme, unexpected hardship, would dissolving the agreed preliminary injunction be an abuse of discretion.[9]

## IV. SUMMARY OF ARGUMENT

The stay should not be lifted. The Agreed Order of Stay and Injunction ("Agreed Order") was entered by this Court as an equitable balance between Defendants' request for a stay and Plaintiffs' request for a preliminary injunction. The Agreed Order was heavily negotiated and

---

[5] The *inter partes* review proceeding ("IPR Proceeding") is *Moore Rod & Pipe, LLC v. Wagon Trail Ventures, Inc.*, Case IPR2013-00418, before the Patent Trial and Appeal Board ("PTAB").
[6] Agreed Order of Stay and Injunction [Doc. 34] at 2-3.
[7] *Scionti v. Dornfried*, 137 F.3d 1351, 1998 WL 92454 (5th Cir. 1998) (not selected for publication) (citing *Elgin Nat. Watch Co. v. Barrett*, 213 F.2d 776, 780 (5th Cir. 1954)).
[8] *Seitz v. Envirotech Systems Worldwide Inc.*, 2007 WL 1795683 at *4 (S.D. Tex. June 19, 2007) (Rosenthal, J.).
[9] *McLaughlin v. Mississippi Power Co.*, 376 F.3d 344, 352-53 (5th Cir. 2004).

drafted jointly by the parties with the express understanding that the IPR Proceeding would be *completely resolved* before lifting the stay, after which this Court would apply estoppel to any assertions that were raised, or that could have been raised by either party, in the IPR Proceeding. If the stay is lifted, estoppel will be prematurely applied and there will be parallel litigation in this Court and the PTO, creating a danger of inconsistent rulings and wasting judicial resources. The parties agreed to stay this case until all IPR appeals were exhausted, but Defendants are breaching that agreement by asking the Court to prematurely lift the stay while the PTAB is reconsidering its final written decision and appeals are still available.

The preliminary injunction should not be dissolved. Since the entry of the Agreed Order, including the preliminary injunction, there has been no significant change in factual conditions or in the law to justify dissolving it.[10] Nor have Defendants suffered any extreme, unexpected hardship as a result of the preliminary injunction. The final written decision by the PTAB was expressly contemplated when the parties entered into their agreement and the court entered the Agreed Order in February. Also contemplated was MRP's desire to enter the rod pumping marketplace with its Shur-Flo™ product. Additionally, Defendants agreed to the deadlines in this case and told the Court they had no intention of marketing or selling their products for rod pumping applications until after December 2014.

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 134 S.Ct. 2111 (2014) does not represent a significant change in the law in the context of this case and is a red herring. Certainly, the *Limelight* case is a significant change in the law for "divided infringement" situations, when direct infringement is alleged based on two actors performing different steps of a patent claim. But there is no "divided infringement" in this case. The well-established rule that inducement of

---

[10] Plaintiffs object to Defendants' Statement of Facts in their Motion [Doc. 42] as not supported by evidence.

infringement must be predicated on direct infringement is over 50 years old, and nothing in *Limelight* changed that rule.

V.  **ARGUMENT**

   A.  **Lifting the stay prematurely will destroy the carefully negotiated structure of the Agreed Order of Stay and Injunction, possibly result in inconsistent rulings and waste judicial resources.**

The Agreed Order is a carefully negotiated agreement set out in stages that build upon one another. Seeking to prematurely lift the stay itself violates the Agreed Order. Furthermore, lifting the stay will destroy the carefully negotiated structure of the agreement. The parties agreed to stay this case until "Final Resolution" of the IPR Proceeding, which requires all IPR appeals to be exhausted and a certificate issued by the PTO.[11] Estoppel is triggered by the issuance of a certificate, and the parties agreed that estoppel would apply once the stay is lifted.[12] Defendants want the stay *prematurely* lifted so that they can pursue their summary judgment motion, and allege that estoppel will apply, by "locking in" the results of the final written decision.[13] Thus, Defendants' request to prematurely lift the stay is simply a strategy to try to improperly invoke estoppel early, attempting to deny Plaintiffs their right to administrative

---

[11] Agreed Order of Stay and Injunction [Doc. 34] at 2-3.
[12] *Id*. at 3. Certificates are not issued until all appeals of a proceeding are exhausted, and patent claims are not cancelled until a certificate issues. 35 U.S.C. § 318(b); 37 C.F.R. § 42.80 as **Exhibit 1**. A patent owner can maintain a cause of action for infringement unless a claim-at-issue is cancelled. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013); *ePlus, Inc. v. Lawson Software, Inc.*, 760 F.3d 1350, 1358-59 (Fed. Cir. 2014). This is consistent with the Federal Circuit's interpretation of the estoppel statute for *inter partes* reexamination, which has similar wording to the estoppel statute for *inter partes* review. *Bettcher Industries, Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 642-43 (Fed. Cir. 2011). In *Bettcher Industries*, the Federal Circuit held that "the estoppel provision of § 315 is triggered not when examination is complete but only after all appeal rights have been exhausted." *Id.*; *see also Software Rights Archive, LLC v. Facebook, Inc.*, 2013 WL 5225522 (N.D. Cal. Sept. 17, 2013) (dicta); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2014 WL 121640 (N.D. Cal. Jan. 13, 2014) (dicta); *Personal Audio LLC v. Togi Entertainment, Inc.*, 2014 WL 1318921 (N.D. Cal. Mar. 31, 2014) (dicta); *Virginia Innovation Sciences, Inc. v. Samsung Electronics Co., Ltd.*, 983 F.Supp.2d 713, 764 (E.D. Va. 2014) (dicta).
[13] As a foreshadowing of this theory, Defendants argue that "the Final Written Decision firmly establishes that none of Plaintiffs' claims 1-20 under the '362 Patent are patentable because of obviousness." Defendants' Motion for Summary Judgment [Doc. 43] at ¶ 40.

review and appeal. Plaintiff Wagon Trail Ventures has filed a request for rehearing, and the PTAB is currently reconsidering its final written decision in light of that request.[14]

It was Defendants who wanted to stay this case based on the IPR Proceeding, and they argued that all factors were in favor of a stay.[15] At a hearing before this Court, the parties agreed to work together on an agreed order of stay and injunction, which was submitted to the Court within a few days.[16] Defendants knew at that time that the PTAB had until December 13, 2014, to issue a final written decision and that the final written decision would be subject to rehearing and appeal.[17]

Defendants want the stay prematurely lifted so that the Court will consider their summary judgment motion, which improperly argues reliance on the final written decision.[18] Yet, the final written decision is currently being reconsidered by the PTAB. After the PTAB rules on Plaintiffs' request for rehearing, either party will have the right to appeal the final written decision. For example, if the PTAB changes its ruling, and finds the claims are patentable, MRP will have the right to appeal. If the PTAB lets its current ruling stand, and finds the claims unpatentable, Plaintiff Wagon Trail Ventures will have the right to appeal. At this stage, the patent claims have not been cancelled, and they will not be cancelled, if at all, until all IPR appeals are exhausted and a certificate issues. Thus, lifting the stay and basing decisions on a final written decision, which is still subject to change, could lead to inconsistent decisions and is

---

[14] Plaintiff Wagon Trail Venture's Request for Rehearing, attached as **Exhibit 2**.
[15] Defendant Moore Rod & Pipe, LLC's Opposed Motion to Stay Proceedings Pending *Inter Partes* Review [Doc. 7] at ¶ 2; *see also* Moore Pipe Inc.'s Joinder [Doc. 13].
[16] Agreed Order of Stay and Injunction [Doc. 34]. The PTAB's decision to initiate an IPR proceeding is not a binding determination on a patent's validity, and Plaintiffs were entitled to continue enforcing the '362 patent despite Defendants' assertions to the contrary. In fact, the PTAB specifically stated in its decision initiating the IPR that it "has not made a final determination on the patentability of any challenged claim." IPR Decision Instituting IPR [Doc. 42-2] at 15, attached as Exhibit 2 to Defendants' Motion [Doc. 42].
[17] 37 C.F.R. § 42.100(c), attached as **Exhibit 3**. Further, there was nothing improper about Plaintiff Wagon Trail Ventures defending its patent in the IPR Proceeding or the filing of this lawsuit, and the time periods involved were well known to both sides. Thus, Defendants' assertion that Plaintiffs were trying to "run out the clock" is incorrect.
[18] Defendants' Motion for Summary Judgment and Motion for Award of Attorneys' Fees, subject to Motion to Lift Stay and Dissolve Preliminary Injunction [Doc. 43].

a waste of judicial resources. One of the reasons for staying this case was to simplify the issues, but lifting it now and basing rulings on the final written decision could result in complicating the issues exponentially if the Court and the PTAB move forward in separate evaluations of the same issues.

Accordingly, Plaintiffs submit that the Agreed Order should remain in place, and the stay not lifted until the time the parties agreed—after the IPR appeals are exhausted and a certificate issues. That way there is no question as to its finality. Estoppel would apply as the parties agreed. Also, the danger of inconsistent rulings and wasting judicial resources would be gone. Therefore, Plaintiffs ask the Court to use its discretion to deny Defendants' motion to lift the stay.

**B. There has been no significant change in factual conditions or in the law to justify dissolving the agreed preliminary injunction.[19]**

**1. Dissolving a preliminary injunction requires a significant change in circumstances and extreme, unexpected hardship.**

Defendants have asked the Court to dissolve the parties' agreed preliminary injunction. According to a previous decision by this Court, "[i]t is appropriate to modify an injunction under Federal Rule of Civil Procedure 60(b)(5) if a party can show 'a significant change either in factual conditions or in law.'"[20] Furthermore, "[t]he enjoined party must show 'hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression.'"[21] A district court's decision to dissolve an injunction is reviewed for an abuse of discretion.[22]

---

[19] Of course, Defendants' motion to dissolve the preliminary injunction should not be considered unless the stay of this case is lifted. As with the motion to lift the stay, Defendants admit that their request to dissolve the preliminary injunction before all appeals have been exhausted in the IPR Proceeding is premature. Defendants' Motion [Doc. 42] at ¶ 26.
[20] *Seitz*, 2007 WL 1795683 at *4 (quoting *Agostini v. Felton,* 521 U.S. 203, 215, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)).
[21] *Id*. (quoting *U.S. v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932) and citing *Valentine Sugars, Inc. v. Sudan,* 34 F.3d 320, 322 (5th Cir.1994)).
[22] *McLaughlin*, 376 F.3d at 352-53.

### 2. The PTAB's final written decision is not a significant change in circumstances because it is not a final resolution of the IPR Proceeding.

The parties agreed to a preliminary injunction, which was signed by the Court in February 2014.[23] The agreed preliminary injunction has five provisions.[24] The parties agreed that two provisions related to advertising and supplying certain products would expire on December 7, 2014.[25] Defendants are concerned with those two provisions in their Motion.[26] Defendants agreed that these activities would be enjoined until December 7, 2014, and Defendants' counsel represented to this Court that "whatever preparations are being made are being made to compete *after December of this year* when it will no longer be a patent violation."[27] Therefore, there is no extreme, unexpected hardship as required, and Defendants do not make any attempt to show one.

When the parties agreed to the preliminary injunction, the parties had not conducted any discovery, and the PTAB had just decided to initiate an IPR proceeding for the '362 patent.[28] The court entered the Agreed Order, including a stay of the case, so no discovery has taken place since then.[29]

On October 2, 2014, the PTAB issued a final written decision. As already shown above, the patent statutes and Federal Circuit rulings indicate that estoppel based on an IPR proceeding is not triggered until a "Final Resolution" which requires a "certificate," either that the claims are confirmed as patentable or cancelled as unpatentable. A certificate cannot be issued until all appeals of that IPR proceeding are exhausted. Plaintiff Wagon Trail Ventures has filed a request

---

[23] Agreed Order of Stay and Injunction [Doc. 34].
[24] *Id*. at 3-4.
[25] *Id*. December 7, 2014 is the expiration date of the '362 patent.
[26] The other three provisions require Defendants to forego making false statements, tortiously interfering, and stealing trade secrets. *Id*. None of these three are discussed in Defendants' Motion [Doc. 42].
[27] Hearing Transcript [Doc. 35] at 6:25-7:2.
[28] The PTAB specifically stated in its decision initiating the IPR that it "has not made a final determination on the patentability of any challenged claim." IPR Decision Instituting IPR [Doc. 42-2] at 15.
[29] Agreed Order of Stay and Injunction [Doc. 34].

for rehearing, in which it identified where, in its Final Written Decision, the PTAB had overlooked or misapprehended a number of matters of law and evidence, and asked for reconsideration. That request is currently pending before the PTAB.[30]

Given that a final written decision is not a final resolution of the IPR Proceeding, the circumstances have not changed since the Agreed Order of Stay and Injunction was signed. There certainly has not been a *significant* change in the circumstances of this case, as required. Also, Defendants can hardly claim that requiring them to abide by the agreed preliminary injunction for roughly another month amounts to "hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression."[31] Additionally, the fact that Defendants were not making any preparations to compete with Plaintiffs until after December 2014, as represented by Defendants' counsel,[32] confirms Defendants could not be suffering from extreme and unexpected hardship by not marketing their products. Therefore, there is no justification for prematurely dissolving the agreed preliminary injunction's provisions a month early.

### 3. *Limelight* is simply a red herring, and the change in the law caused by *Limelight* does not apply to this case.

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 134 S.Ct. 2111 (2014) does not represent a significant change in the law in the context of this case and is a red herring. Certainly, the *Limelight* case is a significant change in the law for "divided infringement" situations, when direct infringement is alleged based on two actors performing different steps of a patent claim.[33]

---

[30] Plaintiff Wagon Trail Venture's Request for Rehearing, attached as **Exhibit 2**.
[31] Although the other three provisions (false advertising, tortious interference, and stealing trade secrets) do not expire on December 7, 2014, Defendants readily agreed to these provisions at a hearing before this Court, and Defendants have not specifically addressed these other three provisions in their Motion. Hearing Transcript [Doc. 35] at 22:14-23.
[32] Hearing Transcript [Doc. 35] at 6:25-7:2.
[33] *Limelight*, 134 S.Ct. at 2117, (discussing *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-30 (Fed. Cir. 2008)).

But there is no "divided infringement" in this case. The well-established rule that inducement of infringement must be predicated on direct infringement is over 50 years old, and nothing in *Limelight* changed that rule. Indeed, Defendants made the exact same argument before they agreed to the preliminary injunction.[34]

Furthermore, *Limelight* has no application to Plaintiffs' declaratory judgment action against MRP for inducement (Count III). Defendants' motion mischaracterized Plaintiffs' claims against MRP. Plaintiffs have not sued MRP for *already having* induced infringement, but rather have sought a declaratory judgment that

> any conduct by [MRP] or MPI that encourages customers to perform [MRP's] Accused Methods constitutes inducement of infringement of U.S. Patent No. Re 36,362 in violation of 35 U.S.C. § 271(b), where such conduct includes providing Shurflo Products to customers who use such Shurflo tubing in a production well that uses a rod pumping system with sucker rods.[35]

Thus, Plaintiffs' declaratory judgment action seeks a ruling that MRP *will be* inducing infringement *if* it sells its Shur-Flo™ products to customers and *if* those customers use those products in rod pumping well.[36] Direct infringement is not a prerequisite for a party to seek a declaratory judgment that a party's actions will induce infringement. Thus, there has been no significant change in factual conditions or in the law to justify dissolving the agreed preliminary injunction.

The Federal Circuit has held that a party can seek a declaratory judgment as to inducing infringement,[37] and although direct infringement is a prerequisite to a finding that a party has

---

[34] Defendants' Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction [Doc. 23] at ¶¶ 28-29.
[35] Complaint [Doc. 1] at ¶ 54.
[36] There is no dispute that an actual controversy exists among the parties. Plaintiffs sent a cease-and-desist letter in April 2013 demanding that Defendants stop infringing the '362 patent. Letter from Elliott to R. Moore [Doc. 22-10]. In June 2013, Defendants claimed that they were not infringing, that the '362 patent was "likely invalid" anyway, and then asked for a license. Letter from D. Nye re: patent [Doc. 22-12]; Declaration of Louis A. Russo [Doc. 22-4] at ¶ 10. Plaintiffs did not accept the license offer, and Defendant MRP filed its IPR petition a few days later. MRP's Amended IPR Petition [Doc. 22-13]. Thus, it is disingenuous for Defendants to refer to this lawsuit as "retaliatory."
[37] *Fina Research, S.A. v. Baroid Limited*, 141 F.3d 1479, 1481-82 (Fed. Cir. 1998).

16

actively induced infringement, direct infringement is not a prerequisite for there to be an actual controversy predicated on whether certain conduct constitutes inducement of infringement.[38] This holding was followed in *Allergan, Inc. v. Alcon Laboratories, Inc.* when the Federal Circuit explained that "under *Fina*, a method of use patent holder could potentially bring an action against a generic drug manufacturer for induced infringement under 35 U.S.C. § 271(b) on the day the ANDA was approved before a single prescription of the generic drug was written by a third party physician."[39] Thus, Plaintiffs' request for declaratory judgment of inducing infringement against Defendant MRP does not require direct infringement to have already taken place. *Limelight* does not address declaratory judgment actions related to inducing infringement.

Further, *Limelight* does not represent a change in the law as to Plaintiffs' claim against Defendant MPI. In its claims against MPI, Plaintiffs do not rely on any theory of "divided infringement," which as noted above, was the focus of *Limelight*. Unlike the claims against MRP, Plaintiffs have charged MPI with active inducement, based on MPI's knowledge of the patent, its advertising of Shur-Flo™ for rod pumping applications, and its having intentionally supplied Shur-Flo™ to its distributor for sales in the United States.[40] In fact, Defendants admit that MPI has sold at least one truck load of pipe to a distributor who shipped it to a customer in the U.S.[41] Plaintiffs have alleged direct infringement by Surge Energy, the end user of MPI's Shur-Flo™ liner products. Also, MPI provided assets and technology to MRP who intends to compete with Western Falcon in the U.S. as to rod-pumping wells.[42] Defendants assert there is no evidence of MPI's intent to induce infringement, but Plaintiffs dispute this assertion, and

---

[38] *Id.* at 1484-85.
[39] *Allergan, Inc. v. Alcon Laboratories, Inc.*, 324 F.3d 1322, 1332 (Fed. Cir. 2003).
[40] Declaration of Louis A. Russo at ¶ 6 [Doc. 22-4]; Declaration of Robert H. Davis at ¶ 39 [Doc. 22-2].
[41] Defendants' Motion [Doc. 42] at ¶ 17. Plaintiffs have not had an opportunity to conduct discovery on the issue of MPI's intent since this case was stayed before discovery began. Thus, Defendants' allegation that there is no evidence of intent is nothing but an unsupported assertion, and it is premature to seek dismissal on such an allegation.
[42] Public LinkedIn Profile of L.J. Guillotte [Doc. 31-22].

contend the facts show intent to cause direct infringement. In any event, that dispute is not relevant to whether the preliminary injunction should be dissolved. The intent requirement is not a change in the law, and Defendants do not even argue so. In fact, this is an argument Defendants made before they agreed to the preliminary injunction.[43]

*Limelight* is not a significant change in the law that justifies dissolving the agreed preliminary injunction. The fact is that Defendants agreed to the preliminary injunction, and the two provisions they are most concerned about expire on December 7, 2014. Their unsupported, no-evidence assertions do not justify dissolving the injunction.[44]

## V. CONCLUSION

For the foregoing reasons, Plaintiffs Western Falcon, Inc. and Wagon Trail Ventures, Inc. ask this Court to deny Defendants' Motion to Lift Stay and Motion to Dissolve Preliminary Injunction [Doc. 42].

---

[43] Defendants' Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction [Doc. 23] at ¶ 30.
[44] Plaintiffs are also filing a response to Defendants' Motion for Summary Judgment [Doc. 43], which will address in more detail why Defendants' unsupported assertions regarding the declaratory judgment action and inducing infringement claim.

Respectfully submitted,

**THE ELLIOTT LAW FIRM. PLLC**

Dated: October 27, 2014
/s/ Douglas H. Elliott
Douglas H. Elliott
Attorney-In-Charge
Texas Bar No. 00653900
S.D. Tex. No. 7830
doug@elliottiplaw.com
Eric M. Adams
Of Counsel
Texas Bar No. 24031686
S.D. Tex. No. 30371
eric@elliottiplaw.com
Sylvia Ngo
Of Counsel
Texas Bar No. 24067100
S.D. Tex No. 1146305
sylvia@elliottiplaw.com
6750 West Loop South, Suite 995
Bellaire, Texas 77401
(832) 485-3560
(832) 485-3511 fax

Dale Jefferson
Of Counsel
Texas Bar No. 10607900
S.D. Tex. No. 9116
jefferson@mdjwlaw.com
**MARTIN, DISIERE, JEFFERSON & WISDOM, LLP**
808 Travis, 20th Floor
Houston, Texas 77002
(713) 632-1700
(713) 632-0101 fax

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 27th day of October, 2014 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by hand-delivery, electronic mail, facsimile transmission and/or first class mail on this same date.

George A. Kurisky, Jr.
Daniel J. Kasprzak
Mark A. Bankston
**JOHNSON DELUCA KURISKY & GOULD, PC**
4 Houston Center, Suite 1000
1221 Lamar Street
Houston, Texas 77010
ATTORNEYS FOR DEFENDANTS
MOORE ROD & PIPE, LLC and
MOORE PIPE INC.

                /s/ Douglas H. Elliott
                Douglas H. Elliott